May it please the Court, Edwin Shorty for Appellant's Succession of Chris Joseph, Michelle Strickland, and Passion Joseph. The issue before this Court is primarily if the video and surrounding circumstances show genuine issues of material fact sufficient to defeat a summary judgment. But before I address the video, I would like to address how the event started that led to the IHOP encounter. At 730 on the night of the shooting, JPSO deputies received a tip from a confidential informant about the delivery of street levels of illegal substances. This information led to the arrest of Mr. Tony Pollard. Mr. Pollard... Mr. Shorty, let me just... this is a friendly comment, so you only have seven minutes and we've read the briefs, we know the underlying facts, so you... Yes, sir. You might better go ahead and make your legal arguments for your client before you run out  Yes, Your Honor. It's... I do want to bring up the time frame on the IHOP video, the IHOP surveillance video. It's up to you. Yes, Your Honor. Mr. Joseph and Mr. Robinson pulled up into the IHOP parking lot at 9.01 and 12 seconds. At 9.01 and 19 seconds, a Ford F-150 unmarked vehicle pulled in directly behind them. Five seconds after that, an unmarked Dodge Ram pickup pulled alongside them on the driver's side. At the same time, an officer had exited the vehicle that was behind them and walked up to their passenger side. Four seconds after that, the vehicle reversed. Exactly one second after the vehicle reversed, shots were fired. Some 17 shots were fired. So, Counselor, you concede that the shots were fired after the vehicle was put in reverse? Yes. Okay. So, there's two groups of plaintiffs that say the video clearly demonstrates or clearly shows that the shots were fired after the vehicle goes into reverse. There's one set of plaintiffs, I'm confusing which brief is which as I sit here, it says no, the video clearly shows that the shots were fired and then the vehicle went in reverse. But your plaintiffs say that the car was put in reverse and started moving and then they shot. To me, the issue that the video shows is not whether or not the vehicle backed up. It's whether or not the officer was behind the vehicle such that his life was in danger justifying the use of force. And the pivotal part is that the officer had to feel that it was reasonable to use the deadly force that he used. And my contention is that it was not reasonable to use the deadly force that he used. But you also say in the briefs, do you not, that the first few rounds that were fired may have been reasonable given that the car was weaponized? No, sir. I thought I read that in a couple of the briefs. No, sir. Not in my briefs, sir. Okay. So, look at the reasonableness factors. We have to see what the circumstances were behind when the shooting started. JPSO deputies have blocked in the vehicle. There's a truck behind them. There's another vehicle. There's another truck on the side of them. There's an IHOP in front of them. The vehicle is effectively immobilized. You've got officers on both sides. When we look at reasonableness, what is the reasonableness of using deadly force? One, when the vehicle is immobilized. Two, when they're patrons in the IHOP. And three, when you've got officers on either side. So many shots were fired that one of the officers struck another officer. And we know this because there was no weapon found inside the vehicle, the Robertson-Joseph vehicle. There was no weapon found on either Mr. Robertson or Mr. Joseph's bodies. Both of them, Mr. Joseph was killed at the scene. Mr. Robertson was pronounced dead once he got to UMC. So when evaluating the use of force and we look at those factors, we have to determine is it reasonable to use the deadly force that you use when you have effectively immobilized the vehicle? The vehicle can't go anywhere. The other thing I think we have to look at is the gram factors. The severity of the crime at issue to determine whether or not it was reasonable to use deadly force. There was no crime. What we had was a confidential informant who ratted out some other guy, Mr. Pollard. Mr. Pollard says, hey, there's a guy named Head and I'm going to call Head and we'll do a transaction at the IHOP. All we know is that Mr. Robertson and Mr. Joseph go to IHOP. They're driving the same model car that Mr. Head, Mr. Pollard referenced. We don't see any hand-to-hand transactions. We don't have any knowledge of the conversation between Mr. Pollard and the individual named Head. So there's no arrest warrant or search warrant issued on the information that Mr. Pollard gave or that the confidential informant gave. What did they bring? Did they bring money or drugs? Drugs. Drugs. Yes. So when we're looking at the gram factors and the first factor is whether a crime was the severity of the crime, we don't have a crime. Now if JPSO decided to wait and monitor the situation and determine whether or not a hand-to-hand transaction had happened, maybe we have a different circumstance. But at this point, all you've got is an individual who pulls up at the IHOP. Also the second factor, whether the suspect posed an immediate threat to the safety of the officers or others. Any threat is a manufactured threat and there's an issue of material fact relative to whether or not an officer was in danger. You've immobilized the vehicle. That's the whole point of blocking the vehicle in. The vehicle can't go anywhere. But it's trying to go somewhere. In other words, the vehicle's been weaponized. So what's your best case from the officer's perspective that it's unreasonable to use the force they used given that the vehicle has been weaponized? Whether or not it's reasonable to shoot into a vehicle 17 times to stop a vehicle that could only go back so far, I don't think that's reasonable. Where's your best case showing that that law is clearly established? When we look at reasonable factors, I think this is an issue for a jury to determine. Whether or not an officer can be seen behind the vehicle such that his life was in danger. Well, that's the video. Yes, sir. But you've got the unequivocal statements of at least two of the officers about what happened. There was another officer, I think, who said, well, I can't recall if they reversed first or shot first. But where's the evidence that plaintiffs offer to create a material issue of fact about the officer's version of events? The witness is the video. In Poole, this court looked at a similar circumstance where an individual had avoided, evaded the police and he turned away from the police and was shot in the back. And the court said, when feasible, even if the suspect is armed, a warning must still be given. And this is Poole v. City of Shreveport. In Sanchez v. Fraley, the court said, even though the officer testified that the suspect was digging in his waistband and pointing his hands as though aiming a weapon, an eyewitness testified that the suspect had his hands in the air. So with those differentiation of events, that argument of facts, we can't grant a summary judgment. Not in this circumstance. And just because I don't have an independent witness, I believe the witness is the IHOP video, which there are a number of questions about. I believe I've run out of time. Yes, and you've saved time for rebuttal. Thank you, Mr. Shorty. Thank you. Mr. Dooley. Good morning, Your Honors. May it please the Court. Not to regurgitate what co-counsel said, but there's a key difference between his client and my client. Solis v. Surrett, Fifth Circuit 21-20256 says, two factors must be looked at, whether there was injury, in this case there was a fatality, and whether there was a clearly established constitutional right. My client was a passenger in this vehicle. The officers in their report and via their deposition stated, not only was he not a subject of this investigation, he was not a subject of any investigation. They clearly denote that he had clean hands. They did not even know who he was until after this incident. The weapon of this incident articulated by the officers was the vehicle. Here is a key question. Can a passenger weaponize a vehicle? Is it reasonable for officers to de-weaponize a vehicle that's already blocked in to fire shots into the passenger door? The officers fired shots from both sides. Is it reasonable to de-weaponize a vehicle to fire into the passenger side at a passenger who cannot operate the vehicle? The officers fired ... But don't we focus on what the car was doing in terms of what the officers perceived, not who was in the car, how many passengers, anything like that? I mean, there's this, was it Little case v. Bexar County, suggests we focus on what the vehicle was doing, not the passenger. How do you grapple with that case? I grapple with that case because that case was articulated toward the operator of the vehicle, not the passenger. If we paint this with a broad stroke, if we paint this incident with a broad stroke, then the officers are allowed to shoot at every occupant of the vehicle, even in the backseat. Who cannot weaponize a vehicle? That's the key question to me. Can a passenger weaponize a vehicle? Furthermore, in our brief, we did state, and the video will clearly show, the officers fired first, then the vehicle went in reverse. So we don't really know if the ... But the plaintiffs, the other plaintiffs say the exact opposite. And having watched the video about a dozen times, I don't know that I can tell one way or the other, but you have officers that said, the car went into reverse, then we fired. I mean, I don't see how the inconclusive video contradicts that with a genuine fact dispute. There is a, but there is a genuine fact dispute. Where is it? The fact of whether or not a passenger can mobilize a vehicle or weaponize a vehicle, and whether or not it's reasonable to fire at a passenger. What's your best case that support ... I mean, what you say is logical to me, but what's your best case to support it? I didn't find any cases on a passenger. I only found cases on the driver. So that's the novelty of this case. That's the difference and the uniqueness of my client. He's a passenger. But then how would the officers have known that the law was clearly established at the time they committed the force? They would not know, but it goes to a reasonableness factor, Your Honor. If you're going to demobilize a vehicle, which is ... First we have, before we get to the mobilization of the vehicle, as co-counsel said, the vehicle was blocked in to the rear and either side. So the vehicle was effectively demobilized prior to any movement of the vehicle. It was only so far the car can go. Backed up over one of the policemen, one of the Jefferson Parish officers. And I was getting to that next, Your Honor. That goes to the reasonableness of the officer's protocol. If you have a vehicle blocked in with another vehicle behind it, vehicles on either side, you create a dangerous situation when you stand behind a vehicle when officers are already drawing their weapons on either side. What was the need to stand behind a vehicle when it's already demobilized with one of your vehicles? So I put to you that the officer created his own danger, his own hazard. And my argument is still the same as how far-reaching are we going to say a vehicle can be weaponized. If we attribute that to a passenger, then my client has the same argument as co-counsel. But I think my client has a unique argument in that he was a passenger, merely a passenger, and the officer state he was not the subject of this investigation nor any other investigation after they checked his name. He had nothing pending, no reasonable suspicion to stop him, nothing. They saw him do nothing. They saw him interact with anybody. They didn't see him interact with the driver as far as any contraband or money or anything. They said, to our knowledge, other than being a passenger, in their deposition, other than being a passenger, he did nothing else wrong. And the question I have, and the key issue I think is, do we afford a person to be safe in his person as a passenger of a vehicle when the only weapon that the officers claim is the vehicle itself? And I think we may have to break new ground on this law. And I think, Your Honor, I'm asking the court to review this in light favorable to my client and look at the facts and view him as a passenger with no suspicion whatsoever. All right, thank you, Mr. Dooley. Thank you.  Good morning, Your Honor. In fact, my position is the same as Mr. Dooley, because I also represent Ms. Shonda Stepstow, who is also a mother of one of the kids that belong to Ms. Robson. And I wanted to address the question that Your Honor had raised, how in the world can a passenger de-weaponize, or whether it's an illegal argument for a passenger to de-weaponize a vehicle? I think that basically runs on common sense, Your Honor, because in fact, anyone in here or who ever driven a car knows that a passenger can't start the car, run the car, move the car. So in answering your question, is there any case law that support that issue? I think POOH is more closely related to any issue that we have here with regard to a passenger or the driver. And I say that because they focus on the operator of the car that will place the officer, at least place him in a dangerous situation. But we look at more the common sense of, because I think a lot of the law has drawn itself on common sense when we look at things, and we look at the facts and how things are developed. If you look at the fact that if a police officer takes and places himself behind the vehicle, can he place himself in harm's way? At the same time, you can't yell and then for privilege or qualified immunity when in fact you've placed your own self in harm's way. The case law, I looked at Curleen, and it was talking about the analysis of both questions of law with regard to whether or not the plaintiff's constitution or statute of law was right, and those rights were clearly established by and unknown by the unlawful act of the officer. Now, the unknown, and I'm going to bring this because I'm speaking kind of fast, the unknown, the fact that there was a known factor in his constitutional law, that is the Fourth Amendment. When we're talking about a, how would you say, an investigatory stop, we're talking about robbery versus United States, and how that plays into how an officer can stop and question a person about what they're doing. In this case here, we have a CI that advises the police what's going on, they go out to the scene, the surveillance does not reveal any illegal conduct at all, none. Now the officers acted, in my opinion, based upon all that was given, including the video, acted inappropriately. They got out with their hands, with their guns drawn, on unarmed men, they fired into court, and by the way, I believe that the video is the best evidence to say what is going forth and whether or not it's going backwards. If the court cannot see that the car is moving prior to the shots, and then you see the car moving after the shots, then we have to make reasonable assumptions that maybe the fact that he got shot may have caused the car to move if it was in reverse. There is no evidence to say that the car wasn't in reverse prior to the police officer even coming. We don't know how long- Didn't the video show the glass in the windshield breaking? I'm sorry, I'm sorry. Didn't the video show that the glass breaking on the front of the car, so wouldn't that be after it had been put in reverse? So the reverse would come first and then the shots and the glass breaking? Not necessarily, Your Honor. I don't think so. Because in order for the glass to break, in order for the glass to break, there had to be shots. It had to be shots. Well, it was shot, but it was also in reverse, so I mean- So the car could have been in reverse prior to me even arriving. That's a fact that we don't know. That's something that we have to look at and then determine whether or not if that is the case. I thought the video showed the reverse taillights come on at some point after the first vehicle or second vehicle had come in and boxed the car in. That may very well be true, but the vehicle was not moving. Now, the problem we have here is the number of shots that went into the car, striking both of the defendants, or plaintiffs in this instance, and that would be, that would get one to assume or make the understanding that they are being shot. My problem here with the entire case is that there was no criminal conduct at all. So is it reasonable for officers to get out of the car with a gun drawn? Your time has expired now, Mr. Brown. Thank you. Thank you, Your Honor. Mr. Mulholland? May it please the Court, Jim Mulholland on behalf of the defendant, appellees. So what was reasonable about 16 or 17 shots? Well, I think the amount of shots, well, first of all, there is no constitutional claim of overkill. The question is whether the force was justifiable and reasonable under the circumstances. And, you know, both guns contain 15 plus 1 in the chamber, so there is, I mean, the capacity was there to fire more shots. I've heard a lot of issues being risen today that I guess were at some point raised in the District Court, but aren't before this Court. The sole issue before the District Court was whether excessive force was used in violation of the Fourth Amendment. The District Court, in applying Pierson v. Callahan, decided a constitutional issue and didn't get to the issue of qualified immunity, but this Court is free to do so. There is no unlawful approach. The Court knows that the issue of force is separate from any claim that the detention was unlawful. That's Freeman v. Gore out of this Court. It's also supremely well established in this circuit that any allegation that the initial approach was negligent or somehow faulty is irrelevant for the determination of whether the officer's perception at the time that the force was used was reasonable. What is the time stamp on the video? I'm sure you've watched it many times. I've watched it a million times. Where the first shot was fired, and who fired that? We know who fired it. It was Wibble and Carmouche. I think they were both, I'm pretty sure they were both on the same side of the vehicle. Doubleday was on the other side, who arrived with Jones, who was struck by the vehicle in the rear. The video, as many times as I've watched it, I agree with Judge Wilson, it's certainly not as clear to me or anyone else that I've known, including the District Court judge who's viewed it, and the countless investigators, law enforcement, and otherwise. The video's inconclusive. Is there a genuine issue of material fact? I don't think so, Judge. I think you made the point well that the officers, there is no evidence to contradict the testimony of the officers. Do we draw inferences from an inconclusive video to accrue to the plaintiff's favor? No, I don't think so. It just doesn't change. First of all, I mean, and it's the court, this court held not to bear us, speculation and mere allegations about what the video might show or not show can't create a genuine issue of material fact in a case such as this. I agree with, I think, what Your Honor stated in that there is no fact issue created. The only testimony before the court is the testimony of the officers, which is, for an event like this, very consistent. They did not fire because of any crime that they were investigating. They did not fire because they thought or perceived that one or both of the occupants was armed, although that, in a narcotics investigation, that would be reasonable to assume. They fired when that car backed up and struck another officer, which they clearly perceived. But to Judge Smith's point, then, why fire into the passenger side of the vehicle? I don't think that's factually accurate. I think they fired at the driver, and regrettably and unfortunately, the passenger was struck. Is that why the officer falls on the passenger side of the car? Yes, that's correct. Or is it hit by the vehicle? The Deputy Jones in the rear of the vehicle was shot. In the rear of the vehicle, yes, but... The Deputy Doubleday falls, and it may have been a friendly fire situation. He was shot, right? Also, regrettably, I believe that was, yes, I believe he was grazed with the record, or maybe he was raped. Yeah, he certainly had concerns about a crossfire situation, no question about it. But again, I mean, if you want to draw inferences, that clearly, Wibble and Carmouche perceived a threat. They both discharged... They were on the driver's side of the car? They were on the driver's side of the vehicle. That uncontroverted, that all the shots were emanated from the driver's side? That was my understanding, based on the testimony and the reports. Doubleday had arrived with Jones. Doubleday went to the passenger side of the vehicle. Wibble and Carmouche arrived separately and approached the driver's side. Doubleday was given command... They were all given commands to show your hands and announce themselves as police officers. My understanding of the facts is that the shots came from Wibble and Carmouche. Doubleday did not fire. Carmouche and Wibble would have been on the passenger, on the driver's side of the vehicle. They were all plainclothes? Yes, sir. All the vehicles were unmarked? Yes, sir. No lights, no sirens, no anything in the trucks or whatever that boxed in the vehicle? Not upon initial approach, I don't believe so. I think another, a marked vehicle showed up at some point, but yes. I mean, I guess what I struggle with a little bit is if I was in the same position as the plaintiffs and somebody trapped me so I thought I was about to be robbed, I'd probably do exactly what they did and try to get out of there. Does that flow into the excessiveness of force calculation? Not in my estimation, Your Honor. Again, the issue in this case was a Fourth Amendment excessive force issue. There is not a state claim for negligence or any other claim arising out of the event. I mean, they say they identified themselves as officers, but the windows are up. Correct. We don't know if the driver or the passenger heard that or didn't hear it. Correct. All we have is the testimony, certainly not, all we have is the testimony of the officers saying that they made repeated commands over and over that they were police and, you know, show your hands and the like. Were the police cars configured so that the other car could have actually backed up if they weren't shot? Was there an escape route, or was he just going to back into it? Well, that would be speculation, but I would imagine the car could push the car back and make escape. I don't know. Again, they fired because a deputy was struck and the court found that . . . The deputy was struck with the car. Yeah, Deputy Jones was struck. And when he was struck, the two deputies who fired could no longer see him. And so they thought, regardless of whether there was a truck behind him, they were going to back over him. And that's when they fired to save his life. So they said that they fired because the other officer had been struck? They thought he had been struck, they perceived that he had been struck, and they fired to basically in defense of his life. They did not fire before that, according to what they say? No. And again, the facts and inferences can easily be drawn to support that. They didn't fire upon approach. They fired when the vehicle backed. This is not a case where they . . . There's an important difference. They fired when the vehicle backed or they fired after an officer was struck by the car. Those are two different things. Well, they fired when . . . I think that would have been almost simultaneous. Deputy Jones was directly behind the suspect vehicle. When he threw it in reverse and accelerated quickly, he struck Jones. The record shows what we now know is he's able to dive out of the way after being struck. But they fired when they perceived that he was backing that vehicle at a high rate of speed and endangering Deputy Jones and then anyone else who had been in the parking lot, as the public parking lot as this court found. And if he continued to back and push the deputy's vehicle, it would have been a danger to any pedestrian in the area. The court asked about the facts in support and the cases in support. Unfortunately, the facts in this case are legally indistinguishable from the facts in Hathaway v. Bizzani and a subsequent . . . that's 507 F.3.312. It's a 2007 case. And a subsequent unpublished case, Sanchez v. Tangipahoa Sheriff Daniels. That's a 2011 case. It's unpublished. Both . . . I mean, literally, the facts are almost indistinguishable. Both involved cases where a vehicle accelerated at a high rate of speed, although in neither of those cases where, to answer your question, Judge Smith, neither of those cases where the deputy struck the force was used because the officers perceived that the accelerated vehicle posed a danger to officers and pedestrians that might be in the area. In terms of whether or not . . . in terms of the qualified immunity issue, again, you know, there's the Supreme Court case, Luna v. Mullenix, out of this court, which reversed the denial of summary judgment out of this court. In that case, Department of Safety Texas State Trooper Mullenix positioned himself on an overpass and shot at a vehicle that was in a high-speed pursuit with other deputies from the overpass, killing the suspect because . . . and his justification was he was posing a danger to both the pursuing deputies and any pedestrian that might be in his path. That case relied on previous Supreme Court cases in Brousseau v. Haugen, 125 Supreme Court 596, almost an identical issue where officers used force because they believed that pedestrians and officers might be in danger. And they also cited the Plumall v. Rickford case, again, another very similar case where an officer fatally shot a fugitive who was intent on resuming a chase that might endanger pedestrians and other officers. So even if the district court didn't get to the qualified immunity issue, it decided on the constitutional tort element. But had the district court reached the qualified immunity case to answer your question, Judge, there was no law whatsoever that would put the deputies on notice that their actions were unlawful. And honestly, it's quite to the contrary. The cases out of this circuit that I mentioned, the cases out of the United States Supreme Court, would inform them that their actions were lawful. In terms of whether or not the officers could have made a different approach, parked the vehicles differently, approached the vehicle differently, that just doesn't factor into this court's determination of the force issue. The court can look at Rockwell v. Brown, Frayer v. City, Arlington, Ramirez v. Knowlton, Young v. City, Killeen, Ontiveros. I mean, the cases are just abound. An officer's use of force is determined at the time that he decides to use the force, and everything he did before that. It's just not factored into the analysis, especially the decision that he used deadly force or not. I'm trying to address some of the claims I kind of hear. Again, there was no claim pled for state law negligence or the like. The only issue before this court is the constitutional question of whether the force was violative of the Fourth Amendment and whether the officers would be entitled to qualified immunity. And the case law is just clear that under the facts, the officer's use of force was reasonable. If you have any other questions, I'd be happy to answer them. Thank you. Mr. Shorty, you save some time for rebuttal. Your Honor, one of the things I think that we gloss over is reviewing these things in the light most favorable to the appellants. As Your Honor mentioned, I would be terrified if I pulled up to stuff my face with some pancakes and now I'm blocked in and there are folks approaching me. What lets me know that it's custodial and I'm now under arrest? What lets me know that these individuals are law enforcement? Nothing. Now I'm terrified. I back up. And from this court's perspective, you're setting policy. Does the record show whether or not the officers identified themselves as police? No, Your Honor. It's a video without sound. Now wait a minute. That's the video. But the officers said in testimony that they identified themselves. Of course they said that, Your Honor. But there's nothing to contradict that. And going to there's nothing to contradict that. At some point, looking at the light in most favor to the appellants, what does the video show? What would I think is going on when somebody approaches me and I'm terrified? And we can't set up a circumstance where police officers are now rewarded because they didn't wound anybody. There's only no witness because you killed the individuals. And if we set up a standard like that, then we're saying, yeah, don't shoot to disable. Don't shoot to disable a car. Don't use the asp to break the window. Don't try and disable a driver and get the driver out. We're saying shoot 17 times. Well, no, no. Wait a minute. Now the video at the beginning of the video, there are other witnesses walking to or from the IHOP or they're in the parking lot. Yes. What did they hear? The one individual who had not been deposed did not hear anything other than shots. Other than shots. And. Again, I fall back on the side of the light most favorable to the appellants. We've had a lot of back and forth on this particular issue. That suggests to me that this was not right for a summary judgment. The officer's position is I'm so concerned. For this one officer who allegedly is behind the vehicle. That I shoot into a crossfire. Ignoring the officer on the other side of the vehicle. Well, I would hope you wouldn't be that concerned for one life that you shoot the other. Which is what you did. And that doesn't make any sense. Looking at it in the light most favorable to the plaintiffs. I still fall back on. At this point, what crime is committed other than me pulling into the IHOP? Other than the fact that. You've got a CI who told Mr. Pollard something. Mr. Pollard told you about some other guy. You still haven't witnessed me do a crime such that you would have had articulable facts. To get an arrest warrant or a search warrant. Thank you. Thank you, Your Honors. And I apologize again. Blood pressure medication and coffee. It's not a problem. We've forgotten about it. Thank you. Your case and all of today's cases are under submission.